# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA,
### SOUTHERN DIVISION

| | |
|---|---|
| **SUZANNE OAKES** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CASE** |
| ) | **NUMBER: _____** |
| **LIFE INSURANCE COMPANY** ) | |
| **OF NORTH AMERICA** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

Comes now the Plaintiff, Suzanne Oakes, and hereby files her Complaint against Life Insurance Company of North America.

## PARTIES

1. The Plaintiff, Suzanne Oakes ("Ms. Oakes"), is an insured under Group Long Term Disability Plan for employees of GEICO Corporation, identified as Group Insurance Policy FLK-980028 ("the Plan"), who has been improperly denied disability benefits under the Plan.

2. Defendant, Life Insurance Company of North America ("LINA"), is the Administrator of the Plan. Upon information and belief, LINA is a corporation which conducts business generally in the state of Alabama and specifically within this District.

1

## JURISDICTION AND VENUE

3. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Plaintiff asserts claims for long term disability ("LTD") benefits, enforcement of ERISA rights and statutory violations of ERISA under 29 U.S.C. § 1132, specifically, Ms. Oakes brings this action to recover benefits due to her pursuant to 29 U.S.C. §1132(a)(1)(B) and to enforce her rights under the Plan pursuant to 29 U.S.C. §1132(a)(3). This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties. 29 U.S.C. §§ 1132(a), (e)(1) and (f) and 28 U.S.C. § 1131. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

## INTRODUCTION

4. The Plaintiff in this case was subjected to improper claim handling procedures by LINA as it exploited the shortcomings of ERISA as it relates to claims for "welfare" benefits to avoid paying Ms. Oakes' valid claim for disability benefits. The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefits Plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983). Ms. Oakes, as an employee insured for disability, was supposed to be treated as a beneficiary by LINA as a statutory fiduciary. Instead, LINA has breached those duties and victimized Ms. Oakes by

engaging in improper claim handling procedures. As described in more detail below, LINA has clearly engaged in bad faith claim handling and Ms. Oakes, at minimum, is entitled to *de novo* review and all relief that ERISA provides.

## STATEMENT OF FACTS

5. Ms. Oakes is an insured for benefits under the Plan. LINA is the administrator of the Plan. The Plan provides insureds, like Ms. Oakes, LTD benefits and was in full force and effect at all times relevant to this Complaint.

6. At all relevant times, Ms. Oakes was employed by GEICO Corporation and was a covered participant of the Plan, as defined in 29 U.S.C. § 1002(7) and under the terms and conditions of the Plan.

7. Ms. Oakes, a woman forty-four (44) years of age, worked at GEICO Corporation until her disabilities forced her to stop working on or about October 1, 2014.

8. Ms. Oakes was employed by GEICO Corporation as a Service Representative.

9. Ms. Oakes' medical disabilities include fibromyalgia, myofascial pain syndrome, chronic low back pain, generalized anxiety, major depressive disorder, and chronic fatigue. The symptoms of her impairments and the side effects of the medications and treatments prescribed render Ms. Oakes unable to perform any job.

10. Ms. Oakes was approved for LTD benefits in a letter dated May 18

2016 and was deemed eligible for LTD benefits by LINA effective October 1, 2014.

11. Ms. Oakes received continuous LTD benefits until March 29, 2017, totaling two (2) years of continuous benefits.

12. Ms. Oakes LTD benefits were approved and paid because LINA determined that she was unable to perform the material duties of her regular occupation.

13. By letter dated February 23, 2017, LINA wrongfully terminated Ms. Oakes' LTD benefits beyond March 29, 2017.

14. The Plan at issue, as governed by ERISA and relied upon to deny Ms. Oakes' long term disability benefits states, in part:

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
> 1. unable to perform the material duties of his or her Regular Occupation; and
> 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
> 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
> 2. unable to earn 80% or more of his or her Indexed earnings.

15. Using this test of disability, LINA found Ms. Oakes disabled and approved her disability for two (2) years as Ms. Oakes' fibromyalgia, chronic pain, and fatigue prevented him from performing the essential duties of her own occupation.

16. However, as of March 29, 2017, LINA reversed course and terminated Ms. Oakes' LTD benefits by concluding that she was capable of performing the material duties of any occupation.

17. At all relevant times, and prior to the termination of Ms. Oakes' benefits, she was under the consistent care of Dr. Steven Ma ("Dr. Ma").

18. Before terminating Ms. Oakes' LTD benefits, LINA considered a November 15, 2016 Functional Capacity Evaluation, which found Ms. Oakes to be capable of tolerating only three to six hours of work in a day.

19. On December 9, 2016, Dr. Ma provided a Demonstrated Functional Capacities Form which noted that Ms. Oakes was not released to work, and that this was expected to be an indefinite state.

20. Dr. Ma also completed a Fibromyalgia Questionnaire on December 9, 2016 which listed comorbid chronic lower back pain, depression, and general anxiety disorder in addition to Ms. Oakes' fibromyalgia and documented sixteen (16) of eighteen (18) positive fibromyalgia tender points.

21. LINA referred Ms. Oakes' claim for a Transferable Skills Analysis on February 16, 2017, which determined her own occupation of Policyholder-Information Clerk to be sedentary and identified two occupations, also sedentary, of which Ms. Oakes was deemed capable of performing.

22. LINA subsequently issued its denial letter on February 23, 2017,

notifying Ms. Oakes of the change in the Plan's definition of disability and that, while she was previously determined to be disabled under an Own Occupation standard, she was now considered to be fully capable of performing the duties of a sedentary level occupation under an Any Occupation standard.

23. At the time LINA terminated the LTD benefits on February 23, 2017, it had no information that showed Ms. Oakes' medical condition had improved, when in fact, Ms. Oakes' treating physician opined that her condition continued to impede her ability to work.

24. Ms. Oakes appealed the termination of her LTD benefits in a letter dated August 21, 2017. Ms. Oakes included with her appeal letter additional medical records outlining the decline of her conditions.

25. On July 19, 2017, Dr. Ma completed a Health Leave of Absence Certification of Health Care Provider Form and noted that Ms. Oakes experienced severe pain secondary to fibromyalgia and chronic low back pain, needed to alternate position every fifteen minutes, and suffered worsening symptoms with stress and anxiety. Dr. Ma opined that Ms. Oakes was unable to perform work of any kind and that this state was indefinite.

26. In a letter dated August 21, 2017, Dr. Ma documented Ms. Oakes' diagnoses of fibromyalgia, hypermobility syndrome, myofascial pain syndrome, lumbar spondyloarthropathy, fatty liver disease, generalized anxiety, depression,

irritable bladder symptoms, and fatigue, as well as her treatment history which included physical therapy, pain management, Botox injections, trigger point injections, MRIs, blood tests, CT scans, and functional capacity evaluation testing.

27. Dr. Ma's August 21, 2017 letter listed Ms. Oakes' regular symptoms including severe pain, anxiety, fatigue, migraines, concentration and memory problems, morning stiffness, as well as medication side effects including cognitive problems.

28. Dr. Ma stated in his August 21, 2017 letter that "[b]ecause of limitations of current treatments for Fibromyalgia and related symptoms such as chronic fatigue, it is not likely that Ms. Oakes condition will improve substantially. Given her severe symptoms, frequent exacerbations and the fact that modest increases in activity make her worse, it is difficult to imagine that there are any jobs in the economy that she could perform on a reliable basis."

29. Despite providing proof of her ongoing disability, LINA refused to award Ms. Oakes' LTD benefits and issued a second termination by letter dated April 10, 2018. This termination of benefits was based at least in part upon the paid review of Dr. Robert J. Cooper ("Dr. Cooper") and Dr. David P. Yuppa ("Dr. Yuppa").

30. Dr. Cooper, whom has never seen nor treated the claimant, noted the medical records from Ms. Oakes' primary physician, Dr. Ma, to be "illegible," and

found Ms. Oakes to be physically functionally unlimited based upon a rheumatology appointment in July 2014, a gastroenterology appointment in August 2017, and a consultative examination ordered by the Social Security Administration in September 2017.

31. Dr. Yuppa, whom has never seen nor treated the claimant, acknowledged Dr. Ma's notations of difficulty concentrating and interacting with others, as well as of anxiety and depression, but nevertheless concluded that Ms. Oakes suffered no cognitive, mental, or behavioral impairment.

32. LINA relied on the paid reviewers' opinion over the opinion of Ms. Oakes' treating physician, and by letter dated April 10, 2018 upheld the termination of Ms. Oakes' LTD benefits.

33. By and through counsel in a letter dated October 3, 2018, Ms. Oakes appealed the termination of her LTD benefits. Ms. Oakes included with her appeal letter additional medical records outlining the decline of her condition, as well as personal declarations.

34. Physical therapy notes included with this appeal showed consistent treatment for neck and back pain and fibromyalgia from November 2017 to January 2018.

35. Chiropractic notes throughout June and July 2018 demonstrated consistent reports of widespread pain.

36. A lumbar spine MRI performed on May 30, 2018 demonstrated L5-S1 central disc protrusion, while a cervical spine MRI taken the same day showed tiny C4-5 central disc protrusion.

37. A rheumatology consultation on September 17, 2018 documented Ms. Oakes to be in mild distress and to exhibit diffuse tenderness of the arms, back, and thighs secondary to fibromyalgia.

38. Dr. Ma provided updated records spanning from June 2017 to August 2018 and documenting consistent and ongoing treatment for Ms. Oakes' chronic medical conditions.

39. In support of her appeal, Ms. Oakes submitted a declaration, pursuant to 28 U.S.C. § 1746, through which she outlined the effects of her disabling condition on her activities of daily living and her ability to return to work. Under penalty of perjury, Ms. Oakes noted chronic and severe pain, fatigue, and cognitive problems which made it difficult to complete even simple tasks such as filling out paperwork, cooking meals, or taking her son to school.

40. Keith Wilfong, Ms. Oakes' boyfriend, also provided a declaration in support of Ms. Oakes' appeal, pursuant to 28 U.S.C. § 1746, which documented Ms. Oakes' chronic pain and fatigue, her extensive history of medical treatment, and her inability to accomplish chores, attend social events, or undertake hobbies she previously enjoyed.

41. On October 5, 2018, by and through counsel, Ms. Oakes provided updated medical records from Dr. Ma.

42. Despite providing proof of her disability both before the termination of benefits and throughout the appeals process, LINA refused to award Ms. Oakes' LTD benefits and issued its final termination by letter dated November 12, 2018.

43. In its final termination letter dated November 12, 2018, LINA relied on the opinions of paid medical reviewers Dr. Susan Rosenfield ("Dr. Rosenfield") and Dr. Sara B. Kramer ("Dr. Kramer").

44. Dr. Rosenfield, whom has never seen nor treated Ms. Oakes, acknowledged that Ms. Oakes suffered from major depressive disorder but came to the conclusion that Ms. Oakes experienced no mental, cognitive, or behavioral impairments.

45. Dr. Kramer, whom has never seen nor treated Ms. Oakes, directly contradicted Ms. Oakes primary physician in order to declare that she was not physically functionally limited.

46. Dr. Kramer spoke with Dr. Ma on October 29, 2018, and was informed by Dr. Ma that Ms. Oakes suffered from fibromyalgia and chronic pain, required narcotic pain medication which could interfere with her ability to work, and remained unable to work due to the intensity of her pain.

47. Dr. Kramer disagreed with the findings of the November 15, 2016

Functional Capacity Evaluation requested by Dr. Ma, claiming a lack of full effort despite the examiner's findings of near full physical effort and full reliability of client reports.

48. Dr. Kramer gave more credence to a September 23, 2017 examination, requested by the Social Security Administration and performed by a paid examiner unknown to Ms. Oakes or her medical providers, and yet Dr. Kramer still disagreed with the restrictions in lifting and carrying established within this report in order to declare Ms. Oakes unimpaired and unrestricted.

49. Neither Dr. Rosenfield nor Dr. Kramer considered the records of Ms. Oakes' primary physician, Dr. Ma, instead deeming these notes illegible.

50. Despite a reported inability to understand Dr. Ma's treatment notes, Dr. Rosenfield made no attempt to contact this physician for clarification into Ms. Oakes' medical state and limitations.

51. Despite a reported inability to understand Dr. Ma's treatment notes, Dr. Kramer disregarded the information provided by Dr. Ma in their October 29, 2018 conversation and instead concluded that Ms. Oakes was not functionally limited and was fully able to return to work.

52. LINA paid Dr. Rosenfield Seven Hundred Eighty-Five Dollars ($785.00) for the opinion that Ms. Oakes' disabilities did not restrict or limit her ability to work in any occupation.

53. LINA paid Dr. Kramer Seven Hundred Eight-Five Dollars ($785.00) for the opinion that Ms. Oakes' disabilities did not restrict or limit her ability to work in any occupation.

54. At all relevant times of LINA's review of Ms. Oakes' claim, LINA had the contractual right to obtain better evidence of Ms. Oakes' disability by ordering an independent medical examination.

55. Rather than ordering Ms. Oakes to sit for an independent medical examination, LINA relied on paid record reviews to support its denial of LTD benefits.

56. LINA relied upon the opinions of its paid reviewers over those of Ms. Oakes' treating physicians and informed Ms. Oakes in its November 12, 2018 denial letter that she could bring a legal action for benefits.

57. As of this date, Ms. Oakes has been denied benefits rightfully owed to her under the Plan.

58. Ms. Oakes has met and continues to meet the Plan's definition of disabled.

59. Ms. Oakes has exhausted any applicable administrative review procedures and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

60. LINA's refusal to pay benefits has caused tremendous financial hardship on Ms. Oakes.

## **STANDARD OF REVIEW**

61.     A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan.

62.     When discretionary authority is clearly granted and the insurer of an ERISA plan also acts as a claims administrator, there is a structural or inherent conflict of interest that mandates a heightened arbitrary and capricious standard of review.

63.     Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to LINA or to any other entity who may have adjudicated Ms. Oakes' claim. Therefore, the Court should review Ms. Oakes' claim for benefits under a *de novo* standard.

64.     Upon information and belief, LINA evaluated and paid all claims under the LTD Plan at issue, creating an inherent conflict of interest.

65.     LINA has failed to comply with the letter of the claims procedures outlined in ERISA and therefore Ms. Oakes' claim for benefits should be reviewed by this Court under a *de novo* standard.

66.     In the alternative, if the Court finds that LINA is entitled to the heightened arbitrary and capricious standard of review, the termination of Plaintiff's

benefits constitutes a clear abuse of discretion as LINA's decision to deny Ms. Oakes' LTD benefits was arbitrary and capricious.

## **DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT**

67. LINA has wrongfully denied LTD benefits to Ms. Oakes, in violation of the policy provisions and ERISA, for the following reasons:

(a) Ms. Oakes is totally disabled, in that she is prevented from performing the material duties of any occupation;

(b) Ms. Oakes is entitled to disability benefits under the terms of the Plan, as she meets the Plan's definition of disability and she has otherwise met the conditions precedent of the Plan for coverage and entitlement to benefits;

(c) LINA failed to accord proper weight to the evidence in the administrative record showing that Ms. Oakes is totally disabled;

(d) LINA's interpretation of the definition of disability contained in the Plan is contrary to plain language of the Plan, unreasonable, arbitrary, capricious, and otherwise violated the standards required by ERISA;

(e) LINA failed to allow Ms. Oakes a right to access information upon which it relied to make a final determination, and failed to allow Ms. Oakes an opportunity to respond to said information, before it made

a final determination on her claim for LTD benefits;

(f) LINA wrongfully denied Ms. Oakes a full, fair and impartial review of her benefits claim pursuant to 29 C.F.R § 2560.503-1(h)(1), by ignoring the overwhelming weight and credibility of evidence submitted and instead behaved as an adversary, looking instead for less credible evidence of marginal significance to support its goal of denying her benefits claim;

(g) LINA failed to give proper weigh to Ms. Oakes' own accounts regarding the debilitating effects of her pain;

(h) LINA ignored the records and opinions of Ms. Oakes' treating physicians which show that Ms. Oakes is totally disabled, and instead based its decision to deny benefits on its internal review by LINA staff members and its paid review, who had never seen or treated Ms. Oakes, some of whom never spoke with her treating physicians about the nature of her disability, and who were not as qualified as Ms. Oakes' treating physicians to formulate opinions regarding the nature and extent of her disability;

(i) LINA failed to exercise reasonable flexibility in its claim review process to assure Ms. Oakes a full, fair review, well-reasoned, and principled of her claim;

(j) LINA administered Ms. Oakes' claim for LTD benefits while acting under an inherent and substantial conflict of interest in that LINA served both as fiduciary of and funding source for the Plan, and placed its own pecuniary interests above Ms. Oakes' interests in wrongfully terminating her LTD benefits and failing to administer the Plan as an impartial decision-maker, free of such conflict of interest, would;

(k) LINA made erroneous interpretations of some evidence in violation of its obligation to discharge its duties with care, prudence, skill, and diligence;

(l) LINA acted in bad faith by denying Ms. Oakes' claim based upon the inability of LINA's paid reviewers to find Ms. Oakes disabled, and otherwise failed to administer the Plan honestly, fairly and in good faith, and to at all times act in Ms. Oakes' best interests;

(m) LINA terminated Ms. Oakes' benefits without the support of any new information that showed improvement in Ms. Oakes' medical condition, when in fact, her treating physicians opined that her condition continued to cause severe impairment;

(n) LINA failed to support the termination of benefits with substantial evidence;

(o) LINA imposed a standard not required by the Plan's provisions, by requiring objective evidence of Ms. Oakes' subjective medical conditions where such evidence cannot be reasonably provided;

(p) LINA denied Ms. Oakes' claim for a lack of objective medical evidence when Ms. Oakes has provided ample subjective evidence of a disability and LINA has neither identified any objective evidence that Ms. Oakes could have supplied to support the claim and has not had Ms. Oakes undergo an independent medical examination or a similar in-person probative procedure to test the validity of her complaints;

(q) LINA failed to consider Ms. Oakes non-exertional limitations caused by her disability, such as the side effects of her prescribed medication, her ability to regularly attend work, and the effect her disability has on her concentration, persistence and pace when performing the material duties of any occupation;

(r) LINA's termination of Ms. Oakes' LTD benefits failed to provide a detailed explanation and the basis of its disagreement with the opinions of Ms. Oakes' treating physicians;

(s) LINA wrongfully denied Ms. Oakes' LTD benefits in such other ways to be shown through discovery and/or hearing.

68. As a result of the foregoing, the relief to which Ms. Oakes is entitled includes: (1) monthly LTD income benefits to Ms. Oakes, (2) payment of back benefits from March 30, 2017 to the date of judgment, (3) pre-judgment interest, (4) equitable relief, including declaratory and injunctive relief, to redress LINA's practices that are violative of the Plan and ERISA, and to enforce the terms of the Plan and ERISA, and (6) an award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

## CAUSES OF ACTION

### COUNT ONE
### ERISA (Claim for Benefits Owed under Plan)

69. Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

70. At all times relevant to this action, Ms. Oakes was a participant of the Plan underwritten by LINA and issued to GEICO Corporation and was eligible to receive disability benefits under the Plan.

71. As more fully described above, the termination and refusal to pay Ms. Oakes' benefits under the Plan for the period from at least on or about March 30, 2017 through the present constitutes a breach of Defendant's obligations under the Plan and ERISA. The decision to deny benefits to Ms. Oakes constitutes an abuse of discretion as the decision was not reasonable and was not based on substantial evidence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court for the following:

1. A judgment ordering the applicable standard of review in this case is *de novo*;

2. A judgment ordering that by a preponderance of the evidence, the Defendant has breached its fiduciary duty to the Plaintiff by wrongfully denying her LTD benefits owed to her through the Plan;

3. In the alternative, if the Court determines that the applicable standard of review is the heightened arbitrary and capricious standard, the Court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate arbitrary and capricious review and enter a judgment that Defendant's decision to wrongfully deny Plaintiff's LTD benefits was unreasonable, arbitrary and capricious, and unsupported by substantial evidence;

4. Declaratory and injunctive relief, finding that Defendant violated the terms of the Plan and Plaintiff's rights thereunder by terminating Ms. Oakes' LTD benefits, that Ms. Oakes is entitled to a continuation of future LTD benefits from Defendant pursuant to the Plan;

5. Declaratory and injunctive relief, finding that Defendant breached its fiduciary duties to Plaintiff, enjoining Defendant from further violations of its fiduciary duties, and directing Defendant to take all actions necessary to administer

the Plan in accordance with the terms and provisions thereof and Defendant's fiduciary and other obligations arising under ERISA;

6. A judgment ordering Defendant to pay Ms. Oakes' LTD benefits from March 30, 2017 through the date judgment is entered herein, together with pre-judgment interest on each and every such monthly payment through the date of judgment;

7. An award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g);

8. For such other and further relief as the Court deems just, fit and proper.

Respectfully submitted this the 17th day of August, 2021.

>/s/ Peter H. Burke_____
> Peter H. Burke (ASB-1992-K74P)
> pburke@burkeharvey.com
> BURKE HARVEY, LLC
> 3535 Grandview Parkway, Suite 100
> Birmingham, Alabama 35243
> Phone:   205-930-9091
> Fax:     205-930-9054
> *Attorney for Plaintiff Suzanne Oakes*

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT:**

Life Insurance Company of North America
c/o CT Corporation System
2 North Jackson Street
Suite 605
Montgomery, AL  36104